IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| IN RE MATTER OF THE APPLICATION OF B&C KB HOLDING GMBH FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM THE STATE OF WISCONSIN INVESTMENT BOARD | OPINION AND ORDER<br><br>23-MC-6 |

---

      B&C KB Holding GmbH ("B&C"), a Vienna-based company, claims to have been defrauded in connection with its purchase of an 80% interest in an Austrian packaging company called Schur Flexibles Group ("Schur"). B&C has reported the fraud to the Austrian authorities, who have opened a criminal investigation. Meanwhile, B&C has been attempting on its own to obtain evidence to share with the Austrian prosecutor to support its fraud claims and recoup its losses. As part of this effort, B&C has filed an application with this court under 28 U.S.C. § 1782 for an order authorizing it to obtain discovery from the State of Wisconsin Investment Board ("SWIB"), which B&C believes has relevant information about Schur that B&C can use in the criminal investigation. Dkt. 1. SWIB opposes the application; in the alternative, it asks the court to stay B&C's application pending the disposition of an earlier-filed § 1782 application against related respondents in the Southern District of New York. Dkt. 22.

      For the reasons that follow, I am denying SWIB's request for a stay and I am granting in part and denying in part B&C's § 1782 application: SWIB must produce documents responsive to B&C's first three document requests. SWIB need not designate a witness to sit for a deposition, nor must it provide documents concerning its return or loss as a result of B&C's purchase of Schur. SWIB is a passive, downstream investor at least two levels removed from the entities and individuals that allegedly defrauded B&C. Even assuming any funds that might have flowed to SWIB as a result of the fraud could be subject to forfeiture under Austrian law,

requiring SWIB to trace those funds before any fraud has been officially charged–much less been established–is unduly burdensome at this stage of the proceedings. Likewise, requiring SWIB to designate one of its officers for a deposition is a disproportionate burden to impose on SWIB given its tangential involvement in the subject transaction and the duplicative proceeding pending in SDNY.

## BACKGROUND

The following facts are drawn from B&C's application, which it supports with declarations from its Austrian attorney, Dr. Michael Rohregger, its Managing Director, Thomas Zimpfer, and its New York attorney, Zachary Rosenbaum. Dkts. 4, 5, 11. The material facts are not in dispute:

B&C is a private company located in Vienna, Austria. The State of Wisconsin Investment Board is an independent state-created agency responsible for managing the assets of several state trusts and public funds.

SWIB is one of several passive, limited investors in a Delaware private equity fund, "the LG Fund." SWIB has committed less than 0.05% of its assets to this fund. The LG Fund is managed by an affiliate of Lindsay Goldberg ("LG"), a private equity firm with its principal place of business in New York City. Among its other investments, the LG Fund indirectly holds an ownership stake in AF Coop, an excluded liability cooperative incorporated in the Netherlands. In September 2021, AF Coop, along with Lindsay Goldberg Europe GmBH, sold an 80% ownership stake in Schur Flexibles Group[1] to B&C for €258.4 million (~ $300 million).

---

[1] Specifically, B&C acquired an 80% interest in Atlas Flexibles GmbH ("Atlas"). Atlas in turn directly owned 100% of Schur Flexibles GmbH ("SF"). SF directly owned 100% of Schur Flexibles Holding

B&C avers that, shortly after the sale was completed, B&C discovered evidence that three executives at Schur Flexibles Group—Michael Schernthaner, Michael Fischkin, and Conny Stöhrer — had misappropriated corporate funds and had artificially inflated Schur's 2018-2020 earnings on its financial statements, rendering B&C's investment in Schur virtually worthless. B&C filed a criminal complaint with the Austrian Public Prosecutor's office, which is currently investigating the former Schur executives for suspected aggravated fraud.  Also under investigation  is Thomas Unger, the managing partner of Lindsay Goldberg Europe.

As an alleged crime victim, B&C has the right under Austrian law to submit evidence in the criminal investigation, and the prosecutor is obliged to consider any evidence B&C submits. B&C has already submitted evidence and intends to submit more to the Austrian authorities to ensure that the scope of the criminal investigation includes potential crimes against B&C.

In July 2022, B&C filed a §1782 application in the Southern District of New York, seeking discovery from LG and Michael Dees, one of LG's managing partners, in connection with the criminal investigation pending in Austria and another one in Germany. (The German authorities have since turned their investigation over to Austria.) Over the objection of LG and Dees ("the SDNY respondents"), Magistrate Judge Valerie Figueredo granted the application on February 6, 2023. *See In re B&C KB Holding GmbH*, No. 22MC00180LAKVF, 2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023). The court found that Dees was likely to have information relevant to the foreign criminal proceeding because he was a managing director for a company that co-owned Schur at the time B&C purchased it. 2023 WL 177326, at *5. As for LG, the

---

GemsbH ("SF Holding"). SF Holding directly or indirectly holds interest in numerous other affiliates. The court will refer to Atlas and its subsidiaries and affiliates collectively as the "Schur Flexibles Group" or "Schur."

3

court noted that LG owned 20% of Lindsay Goldberg Europe, one of the parties that sold Schur to B&C in 2021. *Id*. The court observed that "[i]n connection with the purchase and sale of Schur by its investment fund, [LG] would presumably have performed due diligence on Schur and thus could have information relevant to the subject matter of the criminal proceedings." *Id*.

On June 8, District Judge Lewis Kaplan overruled respondents' objections to Judge Figueredo's decision. *In re B&C KB Holding GmbH*, No. 22-MC-180 (LAK) (VF), 2023 WL 4544775 (S.D.N.Y. June 8, 2023). LG and Dees have appealed that decision to the Second Circuit. To date, they have not responded to B&C's discovery requests.

Having failed to obtain any information about Schur directly from LG, B&C now seeks to discover that information from limited, passive investors in the LG Fund, one of which is SWIB.[2] B&C asserts that, as an investor in the LG Fund, SWIB is expected to possess information concerning LG's investments, including Schur. B&C also believes that SWIB likely received a portion of the proceeds from the sale of Schur to B&C and has information regarding the whereabouts of such payments. Specifically, B&C seeks an order requiring SWIB to produce documents and to provide deposition testimony concerning seven topics related to Schur, covering the period from 2016 to the present. Dkt. 11-1. The topics include: SWIB's communications with LG about Schur; information that LG provided to SWIB about Schur; any due diligence that SWIB conducted or was privy to concerning Schur's financials; SWIB's knowledge of the roles, responsibilities and conduct of the former Schur executives under

---

[2] B&C has filed identical Section 1782 applications in federal district courts in Texas, Louisiana, and New York, seeking discovery from three other state pension funds that invest in the LG Fund. *See In re: Application of B&C KB Holding GmbH*, 23-mc-529-RP (W.D. Tex.), *In re: Application of B&C KB Holding GmbH*, 23-cv-365-JWD-EWD (M.D. La.), and *In re: Application of B&C KB Holding GmbH*, 23-mc-15-DNH-CFH (N.D.N.Y.). Those applications remain pending.

investigation; and information showing SWIB's profits or losses on the LG Fund relating to LG's investment in Schur. Dkt. 6.

ANALYSIS

**I. Legal Standard**

28 U.S.C. § 1782(a) provides that

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The order "may prescribe the practice and procedure [for the production], which may be in whole or part the practice and procedure of the foreign country"; but unless otherwise provided in the order, the production shall be "in accordance with the Federal Rules of Civil Procedure." *Id*. In other words, under § 1782, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593–94 (7th Cir. 2011) (internal citations omitted).

Congress enacted the statute in order to provide efficient assistance to participants in international litigation, and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). In deciding whether to grant a § 1782 request, the court must first find that the

applicant has satisfied the statute's threshold requirements before considering whether and to what extent the application is appropriate.

## II. Statutory Elements

Under the statute's plain text, a district court may grant an application under § 1782 if the following elements are met:

> (1) the person from whom discovery is sought resides or is found within the district;
>
> (2) the request is made by a foreign or international tribunal or by any interested person; and
>
> (3) the discovery is for use in a proceeding in a foreign or international tribunal.

28 U.S.C. § 1782; *see also Intel Corp.*, 542 U.S. at 246; *In re Bayerische Motoren Werke AG*, Case No. 22 C 2103, 2022 WL 1422758, at *3 (N.D. Ill. May 5, 2022) (citing *Heraeus*, 633 F.3d at 594).

Here, the first two elements are uncontested: SWIB is officed within this district, less than a mile from the federal courthouse; and B&C, as an alleged victim of a fraud being investigated in an Austrian criminal proceeding, is an "interested person" who may seek discovery under the statute. *Accord In re B&C KB Holding*, 2023 WL 1777326, at *3 (finding B&C to be an "interested person" within the meaning of § 1782).

SWIB argues that B&C's application fails on the third element, *i.e.*, that the discovery B&C seeks "is for use in a proceeding in a foreign or international tribunal." For purposes of this requirement, applicants need only make a *de minimis* showing that the requested discovery is "for use" in the proceeding, so long as the proceeding falls within the scope of § 1782. *See In re Veiga*, 746 F.Supp.2d 8, 18 (D.D.C. 2010) (collecting cases for the proposition that "the

6

burden imposed upon an applicant is de minimis"); *In re B&C KB Holding GmbH*, 2023 WL 1777326, at *5.

There is no dispute that the Austrian criminal investigation is a qualifying foreign proceeding under § 1782. *See Intel*, 542 U.S. at 259 (holding that § 1782(a) applies to many types of non-trial proceedings including civil and criminal investigations). There is no dispute that, as a victim of the potential crimes under investigation in Austria, B&C has the right to submit evidence to the Austrian prosecutor and that if it does, the Austrian prosecutor must consider the evidence. *Cf. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) ("Without some means of injecting the evidence into the proceeding, a § 1782 applicant cannot show that it has a role in the proceeding, such that it may 'use' the information"). Finally, B&C has averred that it does, in fact, intend to submit to the prosecutor any evidence it obtains from SWIB. Rohregger Decl., dkt. 4, at ¶44.

SWIB disputes that B&C has shown that the information it seeks is "for use" in the Austrian criminal proceeding. Its arguments are not persuasive. First, SWIB challenges the credibility of B&C's stated intent, accusing B&C of engaging in a "fishing expedition." This is a puzzling accusation; what is B&C fishing for, and why? SWIB and B&C aren't party opponents or competitors, and SWIB hasn't suggested how B&C could or would use any information it gets from SWIB for anything other the pending criminal investigation.

Second, SWIB asserts that harassment can be inferred from the "delayed timing" of B&C's application. Dkt. 22, at 15. But this argument is undeveloped: SWIB doesn't say what delay it means. Insofar as it is referring to the fact that Austria commenced its investigation a little more than one year before B&C filed its § 1782 application, this court is not persuaded

that the delay evinces an ulterior motive on B&C's part. As B&C points out, it first began seeking discovery about what Schur's sellers knew about the company's allegedly cooked books and corporate malfeasance in July 2022, when it filed its § 1782 application in SDNY for discovery from LG and Dees. This was just four months after the Austrian authorities opened their criminal investigation. It wasn't until LG and Dees manifested their intent to resist production that B&C expanded its discovery requests to LG's passive investors, including SWIB. If anything, B&C's restraint in this regard undermines SWIB's claims of harassment.

Third, SWIB argues that the "for use" requirement is not met because B&C hasn't shown that the Austrian prosecutor is interested in any information in SWIB's possession. Whether the Austrian prosecutor has specifically requested this information is not the test; the question is whether B&C has "'the practical ability to inject the requested information into a foreign proceeding.'" *In re B&C KB Holding*, 2023 WL 1777326, at *5 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131-32). As noted above, Austrian law provides B&C the right to submit evidence to the Austrian prosecutor, and the prosecutor is obliged to consider it. Rohregger Decl., dkt. 4, at ¶ 41. SWIB has not shown or argued otherwise.

Fourth, SWIB disputes the relevance of the information sought by B&C. Courts generally agree that when the applicant seeks information that is "plainly irrelevant" to the foreign proceeding, the "for use" requirement is not met. *See, e.g., In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018); *Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015). SWIB argues that any financial information it has about Schur is irrelevant because B&C hasn't shown that SWIB knows anything about any criminal wrongdoing by any Schur executives. SWIB reads the relevance requirement far too narrowly. Regardless whether SWIB actually had knowledge of criminal

behavior, documents in SWIB's possession concerning Schur's financial condition, concerning SWIB or LG's due diligence with respect to Schur, and any communications between SWIB and LG concerning Schur, are sufficiently relevant to be of possible use to the Austrian criminal investigation.

SWIB voices its most strenuous objection to relevance as to B&C's requests for information concerning SWIB's return or loss resulting from LG's investment in and sale of Schur (Document Requests Nos. 4-6 and Deposition Topics 5-7). B&C asserts that information in SWIB's possession concerning sale proceeds paid by B&C to purchase Schur is relevant because proceeds procured by fraud can potentially be seized and subject to forfeiture under Austrian law. SWIB responds that B&C's assertions concerning potential forfeiture are too speculative to support a finding that the information it seeks is "for use" in the Austrian proceeding. SWIB's argument resonates with the court, but it is better addressed below in the context of determining whether the requested discovery is unduly intrusive or burdensome. For purposes of the statutory inquiry, information about whether SWIB received any proceeds from the Schur sale and what it did with them is not so plainly irrelevant as to defeat B&C's assertion that the sought-after information is for use in the Austrian proceeding.

Finally, SWIB argues that "B&C's expansive subpoenas encompass any document related to Schur spanning a period of over seven years regardless of whether the document relates to the limited scope of the Austrian criminal proceeding," and that this overbreadth is evidence that the requested discovery is not "for use" in the Austrian proceeding. Dkt. 22, at 14. Again, this overbreadth argument conflates the third statutory requirement of § 1782 with the fourth *Intel* discretionary factor. *See Intel*, 542 U.S. at 264–65; *In re B&C KB Holding*, 2023 WL 1777326,

9

at *5 (observing that "'alleged overbreadth of the Subpoenas' is an objection that speaks to the extent of the discovery that should be granted, not whether the statutory 'for use' requirement has been met.")(citation omitted). I will address SWIB's objections to the scope of B&C's requested discovery below.

In sum, SWIB is located in this district, B&C is an interested person with respect to the Austrian criminal investigation, and B&C has made more than a *de minimis* showing that the information it seeks is for use in the Austrian criminal investigation. Accordingly, B&C has met the statutory requirements of § 1782.

### III. Discretionary Factors

Having found that the statutory requirements are met, the court turns to the question whether the discovery should be allowed. *Intel,* 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). In *Intel*, the Supreme Court articulated four factors that courts should consider in ruling on a § 1782 request.

First, "when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*. at 264.

Second, the court should consider the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance. *Id*.

Third, the court should make sure the § 1782(a) request is not a concealed attempt "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id*. at 265.

Fourth, "unduly intrusive or burdensome requests may be rejected or trimmed." *Id*.

I consider each of these factors in turn.

**A. Participant in the foreign proceeding**

In *Intel*, the Court noted that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach," making the need for assistance under § 1782 more apparent. 542 U.S. at 264. Conversely, if a party seeks discovery in a federal district court that it could obtain in the foreign jurisdiction, "thus gratuitously forcing his opponent to proceed in two separate court systems," then a court may infer harassment. *Heraeus*, 633 F.3d at 594.

SWIB is not a participant in the foreign proceeding. Even so, SWIB argues that § 1782 assistance isn't needed because B&C can get the same information elsewhere, either from the individuals under investigation in Austria or from the SDNY Respondents (LG and Dees) in the earlier-filed § 1782 action.

SWIB's argument is unpersuasive. It is beyond unlikely that the targets of the criminal investigation–Unger, Schernthaner, Fischkin and Stöhrer–will voluntarily provide information that might show overvaluation or inflation of Schur's assets and earnings, nor would they possess documents showing SWIB or LG's due diligence or receipt of sales proceeds with respect to Schur. As for LG and Dees, neither is a party to the Austrian criminal investigation. To the extent that SWIB argues that B&C's discovery requests are duplicative of its § 1782 petition

11

filed against LG and Dees, I consider that below in the context of burden. Otherwise, this factor favors B&C.

### B. Receptivity of the Austrian prosecutor to United States judicial assistance

The second discretionary factor considers whether the foreign government or agency would accept assistance from federal district courts. *See Intel*, 542 U.S. at 264. SWIB repeats its argument that there is no evidence that the Austrian prosecutor "has any interest in the information that B&C is seeking from SWIB in this action." Dkt. 22, at 20. SWIB points out that Austrian authorities already have engaged in extensive discovery; if they want more information, contends SWIB, then Austria can file its own § 1782 application or seek assistance through bilateral treaties, such as the Mutual Legal Assistance Treaty.

SWIB's argument is unpersuasive. Courts have held that the second *Intel* factor "weighs in favor of granting the application unless there is some 'authoritative proof' that the foreign court would oppose such assistance." *In re Medytox, Inc.*, No. 118MC00046TWPDLP, 2019 WL 3162174, at *5 (S.D. Ind. July 16, 2019) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100–01 (2d Cir. 1995), report and rec. adopted, No. 118MC00046TWPDLP, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019)); *see also Eduadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010)(noting absence of "clear directive" from Ecuadorian court that it would reject evidence produced in United States). SWIB offers no evidence that the Austrian prosecutor would *oppose* United States federal court assistance in obtaining financial information, audits, or analyses of Schur or communications or documents concerning its prior owners' efforts to sell it, either to B&C or another party. Further, SWIB's contention that any discovery request

12

should come from the Austrian prosecutor would effectively delete the "any interested party" language from the statute. Accordingly, this factor supports granting the discovery request.

### C. Circumventing foreign discovery procedures

The third discretionary factor looks to whether the § 1782 application is an attempt to circumvent the foreign tribunal's proof-gathering restrictions. *Intel*, 452 U.S. at 264–65. "When analyzing this factor, courts regularly look to see if granting the application would undermine a proof-gathering policy of the foreign tribunal." *In re Medytox, Inc.*, 2019 WL 3162174, at *6; *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States.").

SWIB argues that B&C's request would undermine the Austrian criminal code, under which a self-proclaimed crime victim can request that the Austrian prosecutor pursue evidence in furtherance of the criminal investigation. Dkt. 22, at 22 (citing Austrian CCP 224). SWIB argues that absent evidence that B&C has made such a request, the court should find the third factor weighs against discovery. But as just noted, requiring B&C to first attempt to obtain the discovery its seeks through a foreign court or prosecutor "would virtually nullify the statutory provision that interested persons may apply for discovery orders." *In re Medytox, Inc.*, 2019 WL 3162174, at *7 (quoting *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) (internal citations omitted)). In addition, §1782 does not impose an exhaustion requirement. *Id*. B&C need not exhaust all available remedies in Austria before requesting assistance from this court. There being

13

no evidence that B&C is attempting to circumvent a specific policy in Austria concerning proof-gathering in criminal investigations, this factor does not militate toward denying the application.

### D. Burdensomeness of discovery request

Finally, the court may reject or "trim" the application if the discovery sought is unduly intrusive or burdensome.. A district court's discretion under Section 1782 is governed by "ordinary tools of discovery management, including Rule 26." *Heraeus*, 633 F.3d at 597. Rule 26(b) limits the scope of discovery in any civil proceeding to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Section 1782 does not entitle a party in foreign litigation to unbridled discovery.

Undue burden is the main thrust of SWIB's opposition. SWIB doesn't present any specific evidence establishing that compliance with the subpoenas will be cost- or labor-intensive. SWIB simply argues that it is unfair to require it to submit to discovery at all, for three main reasons: (1) the Austrian proceeding has nothing to do with SWIB, which is merely a limited, passive investor in the LG Fund; (2) B&C's § 1782 application is duplicative of its application against the SDNY respondents; and (3) the requests are overbroad in time frame and scope.

SWIB's first two arguments raise fair points. SWIB's orbit is on the outer ring of a concentric circle of investors in Schur. As a mere passive investor in the LG Fund, SWIB is only remotely connected to the alleged fraud under investigation in Austria. It is likely that SWIB never would have been dragged into the Austrian proceeding but for LG and Dees' stonewalling in SDNY. As B&C admits, some of the discovery it seeks from SWIB is information that is also

14

likely to be in LG's possession. Indeed, according to SWIB, if it does have responsive documents in its possession, they likely came from LG.

Nevertheless, the court is not convinced that the burden on SWIB warrants denying B&C's application *in toto*, or, or that this burden warrants staying this action until the completion of the SDNY proceeding, *See Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 4858396, at *2 (W.D. Wis. Aug. 13, 2015) (outlining factors courts should consider in deciding whether to stay discovery). Nothing in the discovery rules prevents a party from seeking the same information from multiple parties, and the court isn't persuaded that B&C's application is brought in bad faith or for purposes of harassment. As the alleged victim of a massive fraud, B&C has a compelling interest in presenting all relevant evidence concerning the sale of Schur to B&C to the Austrian prosecutor before charging decisions are made, an opportunity that may be lost if it waits for the conclusion of proceedings in SDNY. Expanding its search to investors in the LG Fund is a logical next best option. To the extent this is unfair to SWIB, LG is as much to blame as B&C.

Because both sides make valid points, the court will balance their competing interests by granting a trimmed version of B&C's application:

First, B&C's Document Requests 1, 2 and 3 are GRANTED. These requests seek: (1) documents and communications concerning Schur Flexibles Group from the earlier of January 1, 2016, or when Lindsay Goldberg began any form of diligence into acquiring Schur Flexibles Group; (2) Schur's financial statements; and (3) any documents or communications concerning the four individuals currently under investigation (Unger, Schernthaner, Fischkin, and Stöhrer). Dkt. 6-1, at 10. These requests narrowly target information relevant to the Austrian criminal

15

investigation, they should not involve large numbers of documents, and the responsive information should be relatively easy to locate. As noted, apart from characterizing the requests as "sweeping," SWIB has not attempted to show that retrieving this information will actually subject it to an undue burden. SWIB's production deadline is **October 16, 2023.**

Next, B&C's Document Requests 4, 5 and 6 are DENIED. These requests seek documents and communications regarding SWIB's profit or loss, either directly or indirectly, on its investment in the LG Fund as a result of the Fund's investment in Schur. Dkt. 6-1, at 10-11; Dkt. 6-2, at 7. B&C avers that this information is relevant because proceeds paid by B&C for the purchase of Schur that were procured by fraud, to the extent they flowed downstream to SWIB, "can potentially be subject to forfeiture under Austrian law." Rohregger Dec., dkt. 4, at ¶43. SWIB disputes the accuracy of this assertion, *see* dkt. 22, at 18, but the court would not allow this discovery even if B&C is correct. Requiring SWIB to tease out what monies might have flowed to it from the Schur sale is not proportional to the needs of the case and it would be unduly intrusive on SWIB at this early stage of the Austrian criminal proceeding. Fraud charges have not yet been filed, much less proven or quantified monetarily. The possibility of asset forfeiture from a downstream, passive investor like SWIB is, at this point, too remote and speculative to justify B&C's requests.

Finally, in light of SWIB's tangential connection to the Schur sale, its very limited investment in the LG Fund, and the likelihood that relevant information in SWIB's possession likely originated with LG, B&C's request to depose a SWIB representative is DENIED. Requiring a designee to sit for a deposition imposes a significantly greater burden on SWIB in

16

terms of time and money than merely searching its files for documents, and one that is not justified under the unique circumstances of this case.

ORDER

IT IS ORDERED THAT:

1. The State of Wisconsin Investment Board's request to stay this proceeding pending final resolution of B&C's earlier-filed application the Southern District of New York, *In re B&C KB Holding GmbH*, No. 22-MC-180 (LAK) (VF), is DENIED.

2. The application of B&C Kb Holding Gmbh for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 from the State of Wisconsin Investment Board, Dkts. 1 and 8, is GRANTED IN PART and DENIED IN PART, in the manner set forth above.

Entered this 14th day of September, 2023.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge